

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (Sate Bar No. 264916)
2121 North California Boulevard, Suite 1010
Walnut Creek, CA 94596
Telephone: (925) 482-1515
Facsimile: (925) 407-2700
E-Mail: scott@bursor.com
          ltfisher@bursor.com
          swestcot@bursor.com

*Attorneys for Plaintiffs*
*(additional counsel appears on signature page)*

FILED
CLERK, U.S. DISTRICT COURT

AUG – 4 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

## UNITED STATES DISTRICT COURT

"BY FAX"

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILYA PODOBEDOV, JORDON MOUSSOUROS and RICHARD N. JAMES, On Behalf of Themselves and All Others Similarly Situated, | Case No. **LACV11-6408** PSG (PLAx) |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| LIVING ESSENTIALS, LLC, INNOVATION VENTURES, LLC d/b/a LIVING ESSENTIALS, MANOJ BHARGAVA and BIOCLINICAL DEVELOPMENT, INC., | |
| Defendants. | |

CLASS ACTION COMPLAINT

Plaintiffs Ilya Podobedov, Jordon Moussouros and Richard N. James ("Plaintiffs") bring this action against Innovation Ventures, LLC ("Innovation Ventures"), its wholly owned subsidiary Living Essentials, LLC (collectively with Innovation Ventures, "Living Essentials," or the "Company"), Manoj Bhargava ("Bhargava"), and Bioclinical Development, Inc. ("Bioclinical," collectively with Living Essentials and Bhargava, "Defendants") on behalf of themselves and all others similarly situated. Plaintiffs make the following allegations upon information and belief, except as to allegations specifically pertaining to themselves, which are based on personal knowledge.

## **NATURE OF THE ACTION**

1. This is a class action lawsuit on behalf of purchasers of 5-hour ENERGY® products, marketed by Defendants as a healthy dose of long lasting energy that "doesn't jack you up with sugar, caffeine, and herbal supplements." In reality, 5-hour ENERGY® products do not provide five hours of energy and defendants admit that the product provides no caloric energy at all. Any feeling of increased energy or focus can be attributed solely to the product's highly concentrated dose of liquid caffeine.

2. Defendants label their 5-hour ENERGY® products as containing "B-Vitamins for energy" and "amino acids for focus," leading consumers to believe that the product's healthy dose of B-vitamins and amino acids supply the increased energy, when the jolt of alertness is actually the result of a concentrated dose of more than 200 milligrams of caffeine, *more than an extra strength caffeine pill.*

3. Defendants utilize misleading marketing practices as a means of promoting a product with ingredients that do not perform as claimed. Defendants Manoj Bhargava and Living Essentials have received several warning letters from the Food and Drug Administration ("FDA") in connection with the advertising of their other three products which utilize similar marketing practices. Indeed, years before

Bhargava and Living Essentials launched 5-hour ENERGY®, the FDA informed them that they could not get away with making prohibited claims by including such claims in the name of the product itself.

4.     To support their claims, Defendants tout purported "clinical studies," the results of which are misleadingly presented to suggest that 5-hour ENERGY® products act quickly as something other than a concentrated caffeine shot.

5.     The consensus of the medical and nutritional community is clear and consistent: The massive dose of vitamins in 5-hour ENERGY® products are merely flushed out of the consumers' system and provide no energy boost whatsoever. Similarly, the other ingredients in 5-hour ENERGY® do not provide the product with any of its short-term effects. It is all in the caffeine.

6.     Plaintiffs bring this action against Defendants in their individual capacities for direct involvement in the dissemination of the claims at issue in this case. In the alternative, this Complaint also asserts alter ego allegations against Defendant Bhargava and his corporation Bioclinical and seeks to lift the corporate veil of Living Essentials to reach these defendants.

7.     Plaintiffs assert claims on their own behalf and on behalf of a nationwide class for violations of the Magnuson-Moss Act, 15 U.S.C. § 2301, *et. seq.*, unjust enrichment and breach of express and implied warranties. Plaintiffs also assert claims on behalf of subclasses under California law for violations of the California *Consumers Legal Remedies Act* ("CLRA"), Civil Code §§ 1750, *et seq.*, *Unfair Competition Law* ("UCL"), *Business & Professions Code* §§ 17200 *et seq.*, and *False Advertising Law* ("FAL"), *Business & Professions Code* §§ 17500 *et seq.*, and under New York law for violations of that State's *Deceptive Trade Practices Act, General Business Law* § 349, *et seq.*

**PARTIES**

8.     Plaintiff Ilya Podobedov ("Podobedov") is a citizen of New York who resides in Brooklyn, New York.  On various occasions in the last four years, Podobedov purchased and consumed 5-hour ENERGY® products from retail stores in the States of New York, Nevada and California.

9.     Plaintiff Jordon Moussouros ("Moussouros") is a citizen of New York who resides in Westchester, New York.  On various occasions in the last four years, Moussouros purchased and consumed 5-hour ENERGY® products from retail stores in the State of New York.

10.     Plaintiff Richard N. James ("James") is a citizen of California who resides in Sylmar, California.  On various occasions in the last four years, James purchased and consumed 5-hour ENERGY® products from retail stores in the State of California.

11.     Defendant Innovation Ventures is a Michigan limited liability company with its principal place of business in Farmington Hills, Michigan.  Innovation Ventures was formed in July 2000 by Defendant Bhargava and sells a number of products including the dietary supplement 5-hour ENERGY ® and a line of "hangover prevention" products under the Chaser® brand name alternatively marketed as dietary supplements or homeopathic remedies.  The members of Innovation Ventures are citizens and residents of one of the following states: Michigan, Indiana or California. At all relevant times, Innovation Ventures has done substantial business in the State of California.

12.     Defendant Living Essentials, LLC is a Michigan limited liability company and wholly owned subsidiary of Innovation Ventures founded in 2008 with its principal place of business in Farmington Hills, Michigan.  At all relevant times, Defendant has done substantial business in the State of California.

13.    Defendant Bhargava is a resident of Michigan.  He is a board member and Chief Executive Officer of Innovation Ventures.  He owns 79% of Living Essentials (including 30% owned through a closely held company) and is the sole owner of Defendant Bioclinical.  Defendant Bhargava created Chaser® in 2000, Chaser® for Wine Headaches in 2001, Chaser® Plus in 2004 and 5-hour ENERGY® later that year.  Bhargava is the inventor of 5-hour ENERGY® products and assigned the patents for the formulas for the caffeinated and decaffeinated varieties of the product to Bioclinical.  Defendant Bhargava makes personal appearances throughout the United States including the State of California.

14.    Defendant Bioclinical Development is a Michigan corporation with its principal place of business in Farmington Hills, Michigan.  Defendant Bhargava is the sole owner of Bioclinical and its only employee.  Bioclinical holds the patent to the formulas for caffeinated and decaffeinated varieties of 5-hour ENERGY® products.

15.    At all relevant times, each of the Defendants were engaged in the design, manufacture, production, testing, study, inspection mixture, labeling, marketing, advertising, sale, promotion and/or distribution of 5-hour ENERGY® products.

16.    At all relevant times alleged in this matter, Defendant Bhargava has been operating Bioclinical and Living Essentials as his alter egos or vice versa and as a single business enterprise.

17.    At all relevant times alleged in this matter, each Defendant acted in concert with, with the knowledge and approval of and/or as the agent of the other defendants within the course and scope of the agency, regarding the acts and omissions alleged.

1

2

## JURISDICTION AND VENUE

3   18.   This Court has subject matter jurisdiction under 28 U.S.C. § 1331

4   (federal question).  This Court has supplemental jurisdiction over state law claims

5   pursuant to 28 U.S.C. § 1367.

6   19.   This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §

7   1332(d)(2)(A) because this case is a class action where the aggregate claims of all

8   members of the proposed class are in excess of $5,000,000.00, exclusive of interest

9   and costs, and Plaintiffs, as well as most members of the proposed class, are citizens

10  of states different from Defendants.

11  20.   This   Court   has   personal   jurisdiction   over   Defendants   because

12  Defendants conduct substantial business in the State of California through Living

13  Essentials, such that they have significant, pervasive and substantial contacts with the

14  State of California.

15  21.   Venue is proper in this Court under 28 U.S.C. § 1391(a) because a

16  substantial part of the events or omissions giving rise to the claim occurred within

17  this District and because the Defendants are subject to personal jurisdiction in this

18  district.

19  ### Facts Common to All Causes of Action

20  ### False and Misleading Marketing of 5-Hour Energy

21  22.   In 2004, Defendants launched 5-hour ENERGY®, the first ever "energy

22  shot,"[1] into the highly competitive energy drink market.  5-hour ENERGY® products

23  are 1.93 – 2 ounce "energy shots" marketed as dietary supplements, which sell in

24  retail stores across the country for approximately $2.99 per shot (the suggested retail

25  price).  The products come in a number of fruit flavors, and regular, extra strength

26  and decaffeinated varieties.

27

28  [1]   An "energy shot" is an energy drink concentrated into a two-three ounce bottle.

23.   By 2010, the energy shot market had grown to a $1.5 billion industry and is growing at a rate of 35% annually.   The Company continues to retain approximately 80% of the energy shot market and boasts that it sells more than seven million 5-hour ENERGY® products per week.

24.   To maintain its large market share, Living Essentials spends approximately $90 million annually on a massive and ubiquitous marketing and advertising campaign including television and radio commercials, internet websites, print media, event promotion and celebrity endorsements.   The product's success can be attributed to a large extent to the representations in this media campaign.

### *"5 Hours of Energy"*

25.   Defendants' false advertising begins with the product's name:   5-hour ENERGY®. 5-hour ENERGY® does not provide consumers with five hours of energy. It provides no energy at all.   Indeed, in the Company's most recent 30-second television commercials, it admits in a brief, fine print, written disclaimer that 5-hour ENERGY® "does not provide caloric energy."   Nor does it provide any other form of energy.

### *5-hour ENERGY®'s Claim of "Beneficial Ingredients"*

26.   Defendants claim that the product is effective in creating a "feeling" of increased energy, alertness and focus. Defendants, however, falsely and misleadingly attribute this effect to the product's "beneficial ingredients," including B-vitamins and amino acids.   The only ingredient that has any effect is the concentrated dose of caffeine, a psychoactive stimulant.

27.   The regular and extra strength varieties of 5-hour ENERGY® are liquid caffeine shots with a liquid multivitamin including mega-doses of certain B-vitamins, amino acids and enzymes. The product label indicates that a 1.93 oz. bottle of regular strength 5-hour ENERGY® includes large doses of the following B-vitamins: Vitamin B12, Vitamin B6; folic acid (Vitamin B9) and Niacin (Vitamin B3):

1

2

3

4

5

6

7

8

9

10

11

12



**5-hour ENERGY®**
Original

**Supplement Facts**
Serving Size 1.93 fl. oz.

| Amount Per Serving | % Daily Value |
|---|---|
| Niacin (as Niacinamide) 30mg | 150% |
| Vitamin B6 (as Pyridoxine Hydrochloride) 40mg | 2000% |
| Folic Acid 400mcg | 100% |
| Vitamin B12 (as Cyanocobalamin) 500mcg | 8333% |
| Sodium 18mg | <1% |
| Energy Blend 1870mg | ‡ |
| Taurine, Glucuronic acid (as or from glucuronolactone), Malic Acid, N-Acetyl L-Tyrosine, L-Phenylalanine, Caffeine, Citicoline | |

‡Daily value not established.

Other Ingredients: Purified Water; Natural and Artificial Flavors; Sucralose; Potassium Sorbate, Sodium Benzoate and EDTA (to protect freshness).

13 Similar megadoses of liquid B-vitamins can be purchased for less than $0.10 per

14 dose.

15    28.    While consumers may generally be aware of the effects of caffeine, the

16 marketing and advertising for 5-hour ENERGY® products falsely represent or

17 overemphasize the effects of its "beneficial ingredients" other than caffeine and

18 underemphasizes the effect of caffeine. For example, the marketing and advertising

19 claims for 5-hour ENERGY® include the following representations:

20

- A powerful blend of B Vitamins for energy.

21

22
- 5-hour ENERGY®'s blend of vitamins and amino acids gives you hours of smooth energy.

23

24
- 5-hour ENERGY® doesn't jack you up with sugar, caffeine and herbal

25    stimulants. Instead, it's packed with stuff that's good for you – B-

26    vitamins, amino acids and enzymes.

27

28

CLASS ACTION COMPLAINT                                                                    7

- 5-hour ENERGY® is made from a healthy blend of B-vitamins and amino acids that'll wake you up fast and keep you going strong for hours - with no crash. 5-hour ENERGY® is made without sugar and with very little caffeine - so you get real get up and go that lasts.

- 5-hour ENERGY® drinks provides a boost of energy and mental alertness that lasts for hours – with no crash. That's because 5-hour ENERGY® is packed with B-Vitamins, enzymes and amino acids. It contains zero sugar, zero net carbs, and just enough caffeine to get the ball rolling.

- The key ingredients in 5-hour ENERGY® are also available in every day foods – like broccoli, avocados, bananas and apples – or already in you. It contains zero sugar, four calories and as much caffeine as a cup of the leading premium coffee.

29.    The Company discloses that the regular strength variety of 5-hour ENERGY® contains as much caffeine as a cup of premium coffee (four times as much caffeine by volume), while the extra strength variety contains as much as a twelve ounce cup of premium coffee (six times as much caffeine by volume). The Company has refused to disclose the actual amount of caffeine in the product, however, an independent chemical analysis revealed that a single two-ounce bottle of regular strength 5-hour ENERGY® contained 207 milligrams of caffeine.

30.    By way of comparison, extra strength caffeine pills, which have been on the market for decades, contain only 200 milligrams of caffeine. They can be purchased for $6.49 for a 100-pill bottle or less than 6.5 cents per pill.

31.    One of the Company's commercials, currently available on its Youtube.com page features a bottle of 5-hour ENERGY® and a high performance

1  stock car speeding down a racetrack above text that reads: "B-Vitamins for energy.
2  Amino acids for focus."[2]



9      32.    Another commercial reads: *"B-Vitamins for Energy. Amino Acids Focus*
10 *& Better Mood. Enzymes Feel it Faster,"* while an off-screen narrator says:

12     *With 5-hour ENERGY® you can leave*
       *grogginess behind and sail through your*
13     *day without feeling jittery, tense, or, you*
       *know. That's because 5-hour ENERGY®*
14     *contains a powerful blend of B vitamins*
       *for energy, amino acids for focus and*
15     *for energy, amino acids for focus and*
       *better mood, and enzymes to help you*
16     *feel it faster. There's zero sugar, about*
17     *as much caffeine as a cup of coffee and*
       *only 8 calories.*
18




20     33.    A recent ad targeting the senior citizen market reads:
21 **AARP Special MEMBER OFFER**
22 Getting older is fine, but not having the energy to do the things I enjoy
23 isn't.  That's why I take 5-hour ENERGY®.  It gives me hours of energy
24 to keep on doing the things I love to do.  What do you love to do?
25 Dancing? Golf? Gardening? Whatever it is 5-hour ENERGY® can give
26 you the energy you need.  There's a lot to like about 5-hour ENERGY®

27 _____
[2]    *See* the Company's YouTube Page *http://www.youtube.com/user/5hourenergyshot#p/u/18/NtZqKsV6Haw*
28 (last accessed August 3, 2011).

Zero sugar. Four calories. It's a nutritional supplement that really works. Vitamin B12, vitamin B6, vitamin B3, amino acids and more. Caffeine comparable to a cup of the leading premium coffee. Also available in Decaf version.

34.   To the extent that the preceding statements claim that ingredients other than caffeine provide consumers with increased energy and focus, those statements are false and deceptive. To the extent the statements suggest the same, they are calculated to mislead consumers into believing the false premise that consumers who use 5-hour ENERGY® will receive short term benefits from the B-vitamins and amino acids in the product.

### *Decaffeinated 5-hour ENERGY*®

35.   Defendants claim that their decaffeinated variety of 5-Hour ENERGY® "can provide hours of alertness and focus without making you feel jittery."

36.   Like the other 5-hour ENERGY® varieties, Defendants claim these benefits derive from the so-called "beneficial ingredients" in the product. For example, Defendants claim: "Decaf 5-Hour Energy contains B-vitamins for energy and amino acids for focus."

37.   5-hour ENERGY® Decaf contains a similar concentration of B-vitamins and amino acids as the regular and extra strength varieties. However, it contains only six milligrams of caffeine, less than one-thirtieth the amount of caffeine in the regular caffeinated variety and according to Defendants, equivalent to half a cup of decaffeinated coffee.

38.   The decaffeinated variety of 5-hour ENERGY® provides no feeling of increased energy at all. It is merely a placebo.

### The Questionable Claims and Uses of Defendants' "Clinical Studies"

39.   To add the appearance of legitimacy and support to their claims regarding the product's efficacy, Defendants tout phony clinical studies which

1  misleadingly present results in a manner that suggests 5-hour ENERGY® products act
2  quickly as something other than a concentrated caffeine shot.

3  ### *The Competing Products Study*

4  40.    After several years of making unsubstantiated claims that the products
5  provide 5 hours of energy, the National Advertising Division of the Better Business
6  Bureau conducted an investigation of Defendants' advertising claims for 5-hour
7  ENERGY® products.

8  41.    In response to the investigation, Living Essentials commissioned a
9  clinical study in 2007 to compare the effects of 5-hour ENERGY® to two competing
10 products (the "Competing Products Study").

11 *The Results Refute Defendants' Advertising Claims*

12 42.    The
13 Company summarized
14 the results of the
15 Competing Products
16 Study in the adjacent
17 chart that it published
18 on its website:



19

20 43.    There is no set of data that could be both consistent with Defendants'
21 claims about 5-hour ENERGY® and the representations on the chart.  First, the chart
22 indicated that only 60% of 5-hour ENERGY® products provided five or more hours
23 of energy.  Such a low score is inconsistent with the product's name.  Second, the
24 chart also shows that approximately 25% of 5-hour ENERGY® products caused a
25 crash, but in all of its advertisements and on every product bottle, the Company
26 claims that the product provides:  "Hours of energy now- No crash later."

27

28

CLASS ACTION COMPLAINT                                                        11

44.     Moreover, a report of the so-called clinical trial (which was not published by Defendants) reveals that the chart above falsely reported that subjects using 5-hour ENERGY® experienced a crash after a mean lapse of only 2.43 hours. This result is inconsistent with Defendants' claim that the product does not cause a crash and suggests that most, if not all, subjects experienced a crash.

### *The Clinical Study Mill*

45.     The Competing Products Study was allegedly conducted by Dr. James Blum.  Dr. Blum's company, Marshall-Blum, LLC, purports to be a unique healthcare consulting and research firm, specializing in clinical trials advanced methods of data analysis and outcome-based solutions.

46.     Mr. Blum and his company, however, have a long history of churning out improbable or impossible results from purported clinical studies for a myriad of questionable products including: female sexual enhancement products, homeopathic remedies, hair regrowth formulas, and weight loss products.  Each of the following products tested by Marshall-Blum were found to be effective:

- Chaser™ – Another product manufactured by Defendants for the prevention of hangovers.

- Avlimil™ - A product found by Dr. Blum to be efficacious for female sexual enhancement.   The *same product* is now marketed for the treatment of menopause symptoms rather than sexual enhancement.

- Menastil® – A homeopathic topical remedy for the relief of menstrual cramps. (*See infra* for more information concerning the efficacy of homeopathic treatments).

- Nu Hair™ - "a revolutionary product that fights hair loss and thinning hair with all-natural DHT blockers."  Miraculously, more than nine-in-ten (92.3%) of the subjects that completed Dr. Blum's NuHair clinical trial reported hair loss improvement; and

- Vitexxa™ – a revolutionary weight loss accelerator.  According to the studies reported results, 100% of the subjects using Vitexxa lost weight.

### The Phony Medical School

47.     Innovation Ventures hired an expert to defend the competing products study.  The expert claimed that Dr. Blum was an Epidemiologist and Biostatistician at the University of New England Medical School.  This is false.  The University of New England does not have a medical school.

48.     Innovation Ventures' hired expert further claimed that the University of New England Medical School's Institutional Review Board ("IRB") approved the Competing Products Study.   The Chairman of the University's IRB, however, maintains that his Board never approved such a study.

### The Purported Research Center

49.     Innovation Ventures' hired expert also claimed that the Competing Products Study was conducted at the Southern Maine Research Center, an independent medical research center, located at 344 Cumberland Street, Westbrook, Maine.  In fact, that is the address of a private proctologist's office.  It is not a medical research facility.  A sign at the address reads in large type:  Maine Proctology Center, Richard Stockwell, D.O. and in smaller type below reads: Southern Maine Research Center.

### The Second Study

50.     The second study currently being touted by the Company is promoted in a way that misleads consumers about the ability of the product's ingredients, other than caffeine, to provide a feeling of increased energy.  In this purported clinical study, the Company claims that 5-Hour Energy® "significantly outperformed placebo on continuity of attention and self-related awareness."  It is not surprising that positive results would be obtained when comparing an inert placebo to the concentrated caffeine shot that is 5-hour Energy®.

51.   This study is not subject to review because it is unpublished.   The Company has also refused to provide media and consumer groups with a copy of the study.

52.   The Company has devised a scheme to use the quite predictable results of the placebo study to bolster its misleading claims to consumers about the immediate energy producing benefits of its ingredients other than caffeine.   The placebo study is presented to consumers on the Company's 5-hour ENERGY® website listing the product's ingredients.[3]   Immediately after touting the results of the placebo study, the Company discusses the relation of its ingredients to energy production and alertness, falsely suggesting that the effects of each of those ingredients contributed to the study's positive results.   Though the high concentration of caffeine is wholly responsible for the results of the placebo study, caffeine is the last of the eleven ingredients described.   The description of the remaining ten ingredients, when taken with the representations above, is designed to mislead consumers into thinking that those ingredients have an immediate noticeable effect on consumers of 5-hour ENERGY®.   The website reads, in part:[4]

> In a clinical trial 5-hour ENERGY® significantly outperformed placebo on continuity of attention and self-related awareness. But what's in it? A brief description of each ingredient follows. ...
>
> - Vitamin B6. ... It's involved in over 100 crucial chemical reactions in our bodies.  It helps form nearly all new cells in our bodies....
>
> - Vitamin B12 is involved in a variety of important functions including the production of amino acids and the **processing of carbohydrates into energy**.

---

[3]   *See*   Ex.   A,   5-hour   ENERGY®   Ingredients   &   Safety   webpage   located   at *http://www.5hourenergy.com/ingredients.asp* (last accessed August 3, 2011).
[4]   *Id.*

CLASS ACTION COMPLAINT

14

- Niacin is important for energy production. It plays a key role in *converting fats, proteins, carbohydrates and starches into usable energy*....
- Folic acid, or folate, helps produce and maintain new cells in our bodies...
- Citicoline is a water-soluble compound essential for the synthesis of phosphatidyl choline, a constituent of brain tissue. Citicoline plays a role in neurotransmission and *can help support brain function*....
- Tyrosine. An amino acid that *transmits nerve impulses to the brain*....
- Phenylalanine. An essential amino acid that *enhances alertness*....
- Taurine ... It plays a role in digestion, and is used to process potassium, calcium and sodium in the body, as well as maintain the integrity of cell membranes.
- Malic Acid. The body synthesizes Malic Acid during the process of *converting carbohydrates to energy*....
- Glucuronolactone. A natural metabolite found in the human body. It is produced by the metabolization of glucose in the liver. *It has been shown to reduce sleepiness*.
- Caffeine. Provides a boost of energy and feeling of heightened alertness.

(emphasis added).

**Medical Experts Maintain That Defendants' Claims Are False and Misleading**

53.    Medical and nutritional experts across the country have challenged Defendants' claims that 5-hour ENERGY® is anything more than a concentrated caffeine shot.

54.    A spokesperson for the product recently told CBS news that "the amount of B-vitamins [in the product] are essential for the energy metabolism and for boosting the furnace or the powerhouse of the cell to provide energy." But that claim does do withstand scrutiny.

55.    Dr. Hope Bakoukis, Ph.D., Associate Professor of Nutrition at Case Western Reserve University and Chairwoman of the Sports Cardiovascular and Wellness Nutritionists practice group of the American Dietetic Association has described the Company's claims as "brilliant marketing, but it doesn't have any basis." She notes that although B-vitamins are responsible for the production of energy, just about everyone in the United States receives all of the B-vitamins that they could possibly need from their diets.   Extra B-vitamins are merely flushed out of the system.   She notes that "[w]eary office workers can't expect to get a jolt from B vitamins in any form."

56.    Dr. Marion Nestle, Ph.D., Professor of Nutrition, Food Studies, and Public Health at New York University, echoed those claims and further noted:

> It sounds like a great placebo to me.  You can gulp this down and you feel like you're doing something.  And I'll bet you ask people and they say they feel better.  It's got caffeine — why not?

57.    Dr. Victoria J. Drake, Ph.D., Director of the Micronutrient Information Center at the Linus Pauling Institute of Oregon State University, has stated that "for typical consumers of energy supplements or drinks, B vitamins are nothing more than a gimmick."

58.    Experts working with senior citizen populations have expressed particular outrage with the way the Company markets its product to that vulnerable demographic.    For example, Colin Milner, Chief Executive Officer of the International Council on Active Aging, says the key to having more energy as an older adult is to eat right and to exercise, not to down some magic elixir.  He says, the energy shots merely "give you a big caffeine rush and away you go."

59.    Dr. Evelyn Granieri, Chief of Geriatric Medicine and Aging at Columbia University College of Physicians and Surgeons also noted that "Medically and physiologically" Defendants' claims don't "hold water."

**Alter Ego Allegations**

60.    Bhargava established Living Essentials for an illegal purpose: to perpetrate fraud.  5-hour ENERGY® is Bhargava's and the Company's fourth product to utilize misleading marketing practices as a means of promoting a product with ingredients that do not perform as claimed.  As with his first three products, Bhargava employed the entire arsenal of false marketing and advertising tricks to sell 5-hour Energy® products, including creating phony clinical studies, making false representations in the product name, and attributing the effects of the primary ingredient to lesser ineffective ingredients.

61.    Defendants abused the corporate form to accomplish fraudulent objects, namely, to fraudulently promote the sale of their products, to conceal the proceeds of those frauds and frustrate the ability of victims to obtain redress for the fraud.

### *Living Essentials Was Established and Continues To Operate For a Fraudulent Purpose*

62.    To date, the Company has launched four products: Chaser®, Chaser for Wine Hangovers®, Chaser Plus® and 5-hour ENERGY®.  The Company engaged in fraud with respect to each of these products.  The fraudulent schemes concerning

Chaser® products appear to be dress rehearsals for the main event that is the 5-hour

ENERGY® hoax, as each fraudulent scheme bears many similarities to this case.

### Product 1: Chaser®

63.    In 2000, Defendant Innovation Ventures, LLC launched its first product, Chaser®, a purported dietary supplement for the treatment of hangovers, and claimed that the product could "help prevent hangovers" and "help prevent hangovers by absorbing elements in beer wine and liquor that cause hangovers."

64.    On March 30, 2001, the FDA wrote to Defendant Bhargava and the Company informing them that their claims for the product do not meet FDA requirements for dietary supplements and determined that the claims suggest that the product be treated as a drug for the treatment of a disease rather than a dietary supplement.[5]  The letter reads in part:

> Your submission states that Living Essentials is making the following claims, among others, for the product Chaser:
>
> "Helps prevent hangovers"
>
> "Helps prevent hangovers by absorbing elements in beer, wine and liquor that cause hangovers"
>
> … The statements that you are making for this product suggests that it is intended to treat, prevent, mitigate a disease, namely, the consequences of excessive alcohol consumption. These claims do not meet the requirements of 21 U.S.C. 343(r)(6). These claims suggest that this product is intended for use as a drug within the meaning of 21 U.S.C. 321(g)(l)(B), and that it is subject to regulation under the drug provisions of the act.[6]

65.    Even though classification of Chaser® by the FDA as a drug, rather than a dietary supplement, required Bhargava and the Company to meet rigorous substantiation requirements before continuing their claims concerning Chaser®, Defendants simply ignored this admonishment.  Bhargava thereafter trademarked the prohibited phrase "*Freedom from Hangovers®*," while Defendants continued to sell

---

[5]  *See* Exhibit B, FDA letter to Manoj Bhargava, dated March 30, 2001.
[6]  *Id.*

CLASS ACTION COMPLAINT                                                          18

1   Chaser® as a dietary supplement, continued to make the prohibited claims, and added

2   the following disclaimer to the product packaging:

3       These statements have not been evaluated by the Food and Drug
        Administration. This product is not intended to diagnose, treat, cure, or
4       prevent any disease.

5   But those statements on the product packaging have been evaluated and rejected by

6   the FDA.



12      66.     After receiving the FDA's letter, Bhargava and the Company began

13  touting a  questionable clinical study as proof of the product's effectiveness (just as

14  they later did with 5-hour ENERGY®) and began asserting even more specific

15  medical claims concerning the effects of the product's active ingredients, calcium

16  carbonate and charcoal (vegetable carbon).  As noted on the Company's website

17  located at *www.doublechaser.com/about_chaser.asp* (last accessed August 3, 2011),

18  Defendants assert:

19      Chaser is made of specially processed calcium carbonate and charcoal.
        These ingredients attract and absorb hangover-causing toxins and then
20      pass them out of your body – like a filter.  In the morning you'll wake up
        feeling great.
21

22              ### Product 2: Chaser® *for Wine Headaches*

23      67.     In or about late 2001, the Company introduced its second product to the

24  market, Chaser® for Wine Headaches, as a purported dietary supplemental, which,

25  like Chaser® listed calcium carbonate and charcoal (vegetable carbon) as its active

26  ingredients.  Chaser® for Wine Headaches made almost identical claims as Chaser®,

27

28

CLASS ACTION COMPLAINT                                                                    19

1 │ but this was the first time that the Company included the prohibited claims in the

2 │ product name (a scheme later repeated in the promotion of 5-hour ENERGY®).

3 │     68.   In October 2002, the FDA sent a second letter to Mr. Bhargava

4 │ informing him that the Company's claims concerning Chaser® for Wine Headaches,

5 │ including the name of the product itself, also violated FDA regulations prohibiting

6 │ drug claims in dietary supplements.[7]  The letter reads in part as follows:

7 │ > Your submission states that Living Essentials is making the following
> claims, among others, for the product Chaser for Wine Headaches:

8 │ > "For wine headaches;"

9 │ > "To help prevent wine headaches and other discomforts by absorbing
10 │ > harmful elements in wine."

11 │ > … The statements that you are making for this product, ***including the
> use of the term "wine headaches" in its name***, suggest that it is
12 │ > intended to treat or prevent a disease (i.e., adverse consequences,
> including headaches, associated with alcohol intoxication/poisoning').
> These claims do not meet the requirements of 21 U.S.C. 343(r)(6).
13 │ > These claims suggest that this product is intended for use as a drug
> within the meaning of 21 U.S.C. 321(g)(l)(B), and that it is subject to
14 │ > regulation under the drug provisions of the Act.

15 │ (emphasis added).

16 │     69.   After receiving this second letter from the FDA, Bhargava and the

17 │ Company continued to sell Chaser® for Wine Headaches with the prohibited claim in

18 │ the product's name and continued to claim that the product was: "Specially

19 │ formulated to help prevent headaches and other discomforts by absorbing harmful

20 │ elements in wine."  The product packaging also included the disclaimer that those

21 │ claims had not been evaluated by the FDA.  That disclaimer was false.  The

22 │ statements ***had*** been evaluated by the FDA and had been subsequently rejected.

23 │
24 │
25 │
26 │
27 │
28 │ [7]  *See* Exhibit C, FDA Letter to Manoj Bhargava, dated October 30, 2002.

CLASS ACTION COMPLAINT                  20



### Product 3:  Chaser® Plus

70.    In 2004, Defendants Bhargava and the Company launched their third product, Chaser® Plus, onto the market.  Like the other Chaser® products, the sale of Chaser® Plus is a scam which bears many similarities to the 5-hour ENERGY® hoax. With Chaser® Plus, Defendants Bhargava and the Company falsely asserted that the effects of certain ingredients in the product are caused by other ingredients, which actually do nothing.  In this instance, however, instead of misattributing the effects of caffeine to the product's B-vitamins and amino acids, Defendants Bhargava and Living Essentials falsely attributed the effects of calcium carbonate and charcoal (vegetable carbon) to homeopathic ingredients[8] in their hangover prevention products.

---

[8]   Homeopathy is a pseudoscience which adheres to the "law of similars" which defies the laws of chemistry and other natural sciences. "The collective weight of scientific evidence has found homeopathy to be no more effective than a placebo" *See http://en.wikipedia.org/wiki/Homeopathy* (last accessed August 3, 2011).   "The practice of homeopathy is based on the belief that disease symptoms can be cured by small doses of substances which produce similar symptoms in healthy people."  FDA, Compliance Policy Guide Manual § 400.400 Conditions Under Which Homeopathic Drugs May be Marketed (CPG7132.15).  Available at *www.fda.gov/ora/compliance_ref/cpg/cpgdrg/cpg400-400.html.* (last accessed on August 3, 2011) (the "CPG").  According to homeopaths, the more that a substance that causes a particular symptom is diluted, the more potent the substance becomes in curing that same symptom.  *Id.*  For instance, Chaser® Plus purports to contain a 30x concentration of zincum met, which is equal to one part zincum met and 1,000,000,000,000,000,000,000,000,000,000 parts water.  Because zincum met purportedly causes fatigue, headaches and nausea, homeopaths believe that the highly diluted solution of zincum met will cure those symptoms in hangover sufferers.

CLASS ACTION COMPLAINT                                                                 21

71.    Homeopathic drugs do not receive the same level of scrutiny by the FDA that other drugs or even dietary supplements receive.[9]  Defendants' scheme, therefore, served their dual purpose of avoiding FDA scrutiny and claiming to provide a homeopathic alternative to consumers who prefer those products.  But Defendants lied to the FDA and lied to consumers.

72.    Chaser® Plus products still include the same active ingredients as Chaser® products, but Chaser® Plus products list calcium carbonate and carbon as "inactive ingredients" on the label.  Defendants now claim that the same hangover preventing benefits of Chaser® products provided by calcium carbonite and vegetable carbon are now attributable to the magic of homeopathy in Chaser® Plus products.

73.    Though calcium carbonate and carbon are present in Chaser® Plus, they are apparently no longer "attract and absorb hangover-causing toxins."  Rather, the homeopathic ingredients in Chaser® Plus target the specific symptoms of hangovers.  The Chaser® Plus website explains this phenomenon as follows:

> Chaser® Plus is a homeopathic hangover medicine you take while drinking to help you avoid hangovers. Its ingredients target specific hangover symptoms such as headache, nausea, fatigue, dizziness, light and sound sensitivity, and dry mouth. It's a safe alternative to aspirin, acetaminophen and other traditional hangover remedies, many of which carry serious alcohol warnings.[10]

---

[9]    *See eg.*, *Delarosa v. Boiron, Inc.*, No. 10-cv-1569, 2011 U.S. Dist. LEXIS 80562 (C.D. Cal. July 25, 2011) ("Although homeopathic OTC drugs appear to be treated as a subset of OTC drugs by the FDCA and its various regulations, the way in which they are evaluated and tested by the FDA differs markedly from the ways in which non-homeopathic OTC drugs are evaluated."). *See also* FDA Warning Letter to Homeopathy for Health, dated June 8, 2010 ("We acknowledge that many homeopathic drug products are manufactured and distributed without FDA approval or authorization under enforcement policies set out in the FDA's Compliance Policy Guide entitled, 'Conditions Under Which Homeopathic Drugs May be Marketed' (CPG 7132.15)").

[10]    *See* http://www.chaserplus.com/product.asp (last accessed August 3, 2011).

74.    The FDA expressly prohibits this scheme of attempting to insulate drug products from scrutiny by disguising them as homeopathic remedies. Specifically, the FDA notes: "Drug products containing homeopathic ingredients in combination with non-homeopathic active ingredients are not homeopathic drug products."[11]

75.    Moreover, even though the FDA has told Bhargava and Living Essentials at least twice, that the use of calcium carbonite and charcoal (vegetable carbon) for the treatment of hangovers requires their hangover relief products to pass rigorous testing in order to substantiate the claim that Chaser® products can provide "Freedom from Hangovers," Defendants continue to make those claims without such substantiation.

76.    Whatever effect users of Chaser Plus® may experience from the product's true active ingredients, calcium carbonate and carbon, that effect has nothing to do with the purported homeopathic ingredients in the product.

### Product 4: 5-hour ENERGY®

77.    Later in 2004, Defendant Bhargava and the Company launched their fourth product, 5-hour ENERGY®. This time, Defendants employed their entire arsenal of false marketing and advertising tricks to sell the product, including creating

---

[11]  *See* the CPG.

CLASS ACTION COMPLAINT                                                23

1  phony clinical studies, making false representations in the product name, and
2  attributing the effects of the primary ingredient to lesser ineffective ingredients.

3      78.    The Company was created by Defendant Bhargava for the unlawful
4  purpose of perpetrating fraud on consumers and the FDA and has at all times been
5  operated to serve that purpose.

6  ### *Defendant Bhargava Treated Living Essentials as His Own*

7      79.    Bhargava controls Living Essentials and operates the Company for his
8  personal benefit.  Bhargava owns 100% of Bioclinical and is Bioclinical's only
9  employee.  Bhargava uses Bioclinical to funnel money out of Living Essentials.
10  Living Essentials pays substantial fees to Bioclinical.    Employees of Living
11  Essentials perform accounting work for Bioclinical for which they are paid by Living
12  Essentials.

13  ### *Defendant Bhargava Has Kept Living Essentials Undercapitalized*

14      80.    Living Essentials has generated millions of dollars in sales, but that
15  money is immediately taken out of the Company's accounts because Defendant
16  Bhargava has kept the Company undercapitalized in order to make it judgment proof.

17      81.    Defendant Bhargava told both the Company's former president and its
18  former controller/operations manager that he "wanted to distribute as much cash out
19  of the Company as possible to keep it judgment proof."  Moreover, both of these
20  former executives have said that such distributions to the Company's members were
21  made on a consistent basis.

22      82.    Defendant Bhargava himself has admitted that the Company's net
23  income for 2007 was $5,000 less than total distributions.  Moreover, in 2008,
24  distributions from the Company exceeded net income. Meanwhile, in both 2007 and
25  2008, the Company spent millions of dollars in advertising and brought in millions
26  more from sales of 5-hour ENERGY® products.

27
28

83.     The Company is dominated by Defendant Bhargava who has used Living Essentials' corporate form to conceal the profits and income derived from his fraudulent practices.

84.     In light of Defendant Bhargava's domination of Living Essentials, there is such a unity of interest and ownership between him, Living Essentials and Bioclinical that their separate personalities no longer exist.  Moreover, failure to disregard the corporate entity would sanction fraud and promote injustice in these circumstances, since Defendant Bhargava may abscond with the proceeds of the fraud, after leaving Living Essentials insolvent and unable to satisfy any judgment that may be obtained in this action.

## CLASS ACTION ALLEGATIONS

85.     Plaintiffs bring this action on behalf of themselves and all other similarly situated persons pursuant to Rule 23 of the *Federal Rules of Civil Procedure*.

86.     Plaintiffs seek to represent a Class defined as all persons in the United States who purchased a 5-hour ENERGY® product.  Excluded from the Class are persons or entities that purchased 5-hour ENERGY® products for resale, Defendants and their subsidiaries and affiliates.

87.     Plaintiffs Podobedov and Moussouros further seek to represent a subclass defined as all Class members who are New York residents or who purchased 5-hour ENERGY® products within the State of New York (hereafter, the "New York Subclass").

88.     Plaintiffs Podobedov and James further seek to represent a subclass defined as all Class members who are California residents or who purchased 5-hour ENERGY® products within the State of California (hereafter, the "California Subclass").

89.     Plaintiffs Podobedov and James further seek to represent a subclass defined as all California Subclass members who purchased a 5-hour ENERGY®

energy shot for personal, family or household purposes (hereafter the "California Consumer Subclass").

90.    Members of the Class and Subclasses are so numerous that joinder of all members is impracticable. While the exact number of Class members is presently unknown, and can only be ascertained through appropriate discovery, Plaintiffs believe the members of the Class exceed hundreds of thousands, if not millions of persons.

91.    Common questions of law and fact exist as to all members of the Class and Subclasses and predominate over any questions solely affecting individual members of the Class and Subclasses. Among questions of law and fact common to the Class and Subclasses are:

    a. Whether 5-hour ENERGY® products provide consumers with five hours of energy;

    b. Whether 5-hour ENERGY®'s ingredients, other than caffeine, provide immediate benefits to consumers' energy level, concentration and focus;

    c. Whether Defendants expressly and/or impliedly warranted that 5-hour ENERGY® would provide consumers with five hours of energy;

    d. Whether Defendants expressly and/or impliedly warranted that 5-hour ENERGY®'s ingredients, other than caffeine, provide immediate benefits to consumers' energy level, concentration and focus;

    e. Whether Defendants breached warranties by making the representations above;

    f. Whether Defendants have been unjustly enriched as a result of their unlawful business practices;

    g. Whether Defendants actions as described above violated the Magnuson-Moss Act, 15 U.S.C. § 201, *et seq.*,

h.  Whether Defendants' actions as described above violate the California *Unfair Competition Law*, California *Business & Professions Code* §§ 17200, *et seq.*;

i.  Whether Defendants' actions as described above violate the California *False Advertising Law*, California *Business & Professions Code* §§ 17500, *et seq.*;

j.  Whether Defendants' actions as described above violate the California *Consumers Legal Remedies Act*, California *Civil Code* §§ 1750, *et. seq.*;

k.  Whether Defendants' actions as described above violate the New York *General Business Law* §§ 349, *et seq.*;

l.  Whether Defendants should be required to make restitution, disgorge profits, reimburse losses, pay damages and pay treble damages as a result of the above described practices;

m.  Whether Defendants should be enjoined from continuing the above-described practices;

n.  Whether the corporate form of Living Essentials should be ignored and liability imposed on Defendants Bhargava and Bioclinical under an alter ego theory; and

o.  Whether Defendants should be required to make restitution, disgorge profits, reimburse losses, pay damages and pay treble damages as a result of the above described practices.

92.  Plaintiffs' claims are typical of the claims of Class, California Subclass, California Consumer Subclass, and New York Subclass members because Plaintiffs and each member of the Class purchased 5-hour ENERGY®, and suffered a loss of money as a result of that purchase.

93.  Plaintiffs are adequate representatives of the Class, California Subclass, California Consumer Subclass and New York Subclass because their interests do not

conflict with the interests of the Class, California Subclass, California Consumer Subclass and New York Subclass members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class, California Subclass, California Consumer Subclass, and New York Subclass members will be fairly and adequately protected by Plaintiffs and their counsel.

94. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by the individual members of the Class, California Subclass, California Consumer Subclass and New York Subclass may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class and Subclasses to individually redress the wrongs done to them. There will be no difficulty in the management of this class action.

## COUNT I
## VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)

95. Plaintiffs and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

96. Plaintiffs bring this Count I individually and on behalf of the members of the Class, against all Defendants.

97. 5-hour ENERGY products are consumer products as defined in 15 U.S.C. § 2301(1).

98. Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3).

99. Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

100.   In connection with the sale of 5-hour ENERGY products, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that the products provided 5-hours of energy, B-vitamins for energy and amino acids for focus.

101.   By reason of Defendants' breach of the express written warranties stating that the products provided 5-hours of energy, B-vitamins for energy and amino acids for focus, Defendants violated the statutory rights due Plaintiffs and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiffs and Class members.

## COUNT II
## UNJUST ENRICHMENT

102.   Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

103.   Plaintiffs bring this Count II individually and on behalf of the members of the nationwide Class against all Defendants.

104.   "The unjust enrichment claim can be made from common classwide proof." *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 239 (C.D. Cal. 2003) (certifying a nationwide class where plaintiffs alleged defendants were unjustly enriched through a common scheme.).  "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009), *quoting Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007).

105. Plaintiffs and Class members conferred a benefit on Defendants by purchasing 5-hour ENERGY® products.

106. Defendants have been unjustly enriched in retaining the revenues derived from Class members' purchases of 5-hour ENERGY® products, which retention under these circumstances is unjust and inequitable because Defendants misrepresented the facts concerning the efficacy of the product and caused Plaintiffs and the Class to lose money as a result thereof.

107. Plaintiffs and Class members suffered a loss of money as a result of Defendants' unjust enrichment because: (a) they would not have purchased 5-hour ENERGY® products on the same terms if the true facts concerning those products had been known; (b) they paid a price premium due to the false representations about the products; and (c) the products did not perform as promised.

108. Because Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and Class members for their unjust enrichment, as ordered by the Court.

## COUNT III
## BREACH OF EXPRESS WARRANTY

109. Plaintiffs repeat and reallege each and every allegation above, as if set forth in full herein.

110. Plaintiffs bring this Count III individually and on behalf of the members of the nationwide Class against all Defendants

111. Defendants expressly warranted in their marketing, advertising and promotion of 5-hour ENERGY® products by representing that those products could provide five hours of energy and an immediate increase in energy, alertness and focus as a result of ingredients other than caffeine.

1    112. Plaintiffs and members of the Class purchased 5-hour ENERGY®
2    products based upon the above said express warranty.

3    113. Defendants breached their express warranty by selling a product that is
4    not capable of providing five hours of energy or an immediate increase in energy,
5    alertness and focus from ingredients other than caffeine.

6    114. As a direct and proximate result of Defendants' breaches of their express
7    warranty, Plaintiffs and members of the Class have been damaged in that they did not
8    receive the product as specifically warranted and/or paid a premium for the product
9    based on the Defendants' representations.

10                                  **COUNT IV**
11   **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

12   115. Plaintiffs repeat and reallege each and every allegation above, as if set
13   forth in full herein.

14   116. Plaintiffs bring this Count IV individually and on behalf of the members
15   of the nationwide Class against all Defendants

16   117. Defendants impliedly warranted that the 5-hour ENERGY® products
17   they manufactured, sold and distributed could provide five hours of energy and an
18   immediate increase in energy, alertness and focus as a result of ingredients other than
19   caffeine and that the products were merchantable and fit for their intended purpose.
20   Defendants did so with the intent to induce Plaintiffs and members of the Class to
21   purchase those products.

22   118. Defendants breached their implied warranties in that the products cannot
23   provide five hours of energy and the ingredients other than caffeine do not provide an
24   immediate increase in energy, alertness and focus as marketed, advertised and
25   promoted.

26
27
28

119.   Had Plaintiffs and the members of the Class known the true facts, they either would not have purchased the products or would not have been willing to pay the premium price Defendants charged for the products.

**COUNT V**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**(Bus. & Prof. Code §§ 17200, *et seq.*)**
**(Injunctive Relief and Restitution Only)**

120.   Plaintiffs and Class members hereby reallege and incorporate by reference each allegation set forth above as if fully set forth herein and further allege as follows:

121.   This Count V is asserted by Plaintiffs Podobedov and James on behalf of the California Subclass under California law.

122.   Defendants are subject to the Unfair Competition Law ("UCL"), *Business & Professions Code* §§ 17200, *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ...."

123.   Defendants also violated the "unlawful" prong of the UCL by violating California's *Consumers Legal Remedies Act* ("CLRA") as described in Count VII, below.

124.   Defendants also violated the "unlawful" prong of the UCL by violating California's *False Advertising Law* ("FAL") as described in Count VI, below.

125.   Defendants' conduct, described herein, violated the "unfair" prong of the UCL by misrepresenting that 5-hour ENERGY® products would provide the user with five hours of energy, by attributing the products effect to ingredients other than caffeine, and by providing false information about the product's performance in clinical studies.

126.   Defendants' conduct, described herein, violated the "fraudulent" prong of the UCL by misrepresenting that 5-hour ENERGY® products would provide the user

with five hours of energy, by falsely attributing the products effect to ingredients other than caffeine, and by providing false information about the product's performance in clinical studies.

127. Plaintiffs and California Subclass members suffered lost money or property as a result of Defendants' UCL violations because: (a) they would not have purchased 5-hour ENERGY® products on the same terms if the true facts concerning those products had been known; and (b) they paid a price premium due to the false representations about the products.

**COUNT VI**
**FOR VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")**
**(Bus. & Prof. Code §§ 17500 *et seq.*)**

128. Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

129. This Count VI is asserted by Plaintiffs Podobedov and James on behalf of the California Subclass under California law.

130. Defendants violated California *Business & Professions Code* § 17500 by publicly disseminating misleading and false advertisements including information suggesting that 5-hour ENERGY® products could provide the user with five hours of energy, the products effects could be attributed to ingredients other than caffeine, and by providing false information concerning clinical studies purportedly conducted on those products.

131. Defendants' misleading and false advertisements were disseminated to increase sales of 5-hour ENERGY® products.

132. Defendants knew or should have known their false advertisements were untrue or misleading.

133.  Furthermore, Defendants publicly disseminated the false advertisements as part of a plan or scheme and with the intent not to sell 5-hour ENERGY® products as advertised.

134.  Plaintiffs and the members of the California Subclass have suffered harm as a result of these violations of the FAL because: (a) they would not have purchased 5-hour ENERGY® products on the same terms if the true facts concerning the products had been known; and (b) 5-hour ENERGY® products did not perform as promised.

135.  Pursuant to *Business & Professions Code* § 17500, Plaintiffs seek an order of this Court permanently enjoining Defendants from continuing to publicly disseminate misleading and false advertisements as alleged herein.  Plaintiffs also seek an order requiring Defendants to: (a) make full restitution for all monies wrongfully obtained; and (b) disgorge all ill-gotten revenues and/or profits.

## COUNT VII
## VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")
### (Civil Code §§ 1750, *et. seq.*)

136.  Plaintiffs and Class members hereby reallege and incorporate by reference each allegation set forth above as if fully set forth herein and further allege as follows:

137.  This Count VII is asserted by Plaintiffs Podobedov and James on behalf of the California Consumer Subclass under California law.

138.  CLRA § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Defendants violated this provision by misrepresenting that 5-hour ENERGY® products were of a standard that could provide the user with five hours of energy, by falsely attributing the product's effect

to ingredients other than caffeine, and by falsely representing the results of clinical testing.

139. CLRA § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Defendants violated this provision by misrepresenting that 5-hour ENERGY® products were of a standard that could provide the user with five hours of energy, by falsely attributing the product's effect to ingredients other than caffeine, and by falsely representing the product's performance in clinical testing of the products.

140. CLRA § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." Defendants violated this provision by misrepresenting that 5-hour ENERGY® products could provide the user with five hours of energy, by falsely attributing the product's effect to ingredients other than caffeine, and by falsely representing the results of clinical testing of the products.

141. Plaintiffs and the California Consumer Subclass members suffered lost money or property as a result of these violations because: (a) they would not have purchased 5-hour ENERGY® products on the same terms if the true facts concerning those products had been known; (b) they paid a price premium due to the false representations about the products; and (c) the products did not perform as promised.

142. On July 21, 2011, prior to the filing of this Complaint, a CLRA notice letter was served on Defendants which complies in all respects with California *Civil Code* § 1782(a). Plaintiffs sent Defendants a letter *via* certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770. Defendants were further advised that in the event that the relief requested has not been provided within thirty (30) days, Plaintiffs would amend their Complaint to include a request for monetary damages pursuant to the CLRA.

143.   Wherefore, Plaintiffs seek restitution and injunctive relief for violations of the CLRA.

## COUNT VIII
## VIOLATION OF THE NEW YORK DECEPTIVE TRADE PRACTICES ACT ("DTPA")
### (New York General Business Law §§ 349, *et seq.*)

144.   Plaintiffs repeat and reallege each and every allegation above, as if set forth in full herein.

145.   Plaintiffs Podobedov and Moussouros assert this Count VIII on behalf of themselves and the New York Subclass.

146.   Defendants' business practices of marketing, advertising and promoting 5-hour ENERGY® in a misleading, inaccurate, and deceptive manner by misrepresenting that 5-hour ENERGY® provides five hours of energy and by expressly or impliedly attributing the effects of caffeine to the product's other ingredients, constitutes the use by Defendants of unconscionable commercial practices, deception, and misrepresentation and, thus constitutes multiple, separate violations of the *New York Deceptive Trade Practices Act*, § 349, *General Business Law, et seq.*

147.   In marketing, advertising and promoting 5-hour ENERGY® products to consumers, including Plaintiffs and members of the New York Subclass, Defendants made the material misrepresentations and omissions set forth in this Complaint throughout the United States, including the State of New York.

148.   Defendants' unlawful conduct set forth in this Complaint is material in that it has the capacity to mislead or deceive consumers, including Plaintiffs and members of the New York Subclass.

149.   Defendants' unconscionable commercial practices, false promises, misrepresentations and omissions set forth in this Complaint are material in that they relate to matters which reasonable persons, including Plaintiffs and members of the

CLASS ACTION COMPLAINT                                                                          36

1   New York Subclass, would attach importance to in their purchasing decisions or
2   conduct regarding the purchase of 5-hour ENERGY® products.

3      150.   As a result of Defendants' practices as described herein, Plaintiffs and
4   members of the New York Subclass have suffered an ascertainable loss of money or
5   property in that: (a) they would not have purchased 5-hour ENERGY® products on
6   the same terms if the true facts concerning those products had been known; (b) they
7   paid a price premium due to the false representations about the products; and (c) the
8   products did not perform as promised.

9                            **PRAYER FOR RELIEF**

10      Plaintiffs, on their own behalf and on behalf of the Class, pray for the
11   following relief:

12      A.   For an order certifying the nationwide Class, the California Subclass, the
13   California Consumer Subclass and the New York Subclass under Rule 23 of the
14   *Federal Rules of Civil Procedure* and naming Plaintiffs as Class Representatives and
15   their attorneys as Class Counsel to represent the Class members;

16      B.   For an order declaring that Defendants' conduct violates the statutes
17   referenced herein;

18      C.   For an order finding in favor of Plaintiffs, the Class, the California
19   Subclass, the California Consumer Subclass, and the New York Subclass on all
20   counts asserted herein;

21      D.   For an order awarding compensatory, treble, and punitive damages in
22   amounts to be determined by the Court and/or jury;

23      E.   For prejudgment interest on all amounts awarded;

24      F.   For an order of restitution and all other forms of equitable monetary
25   relief;

26      G.   For injunctive relief as pleaded or as the Court may deem proper; and

27

28

CLASS ACTION COMPLAINT                                                          37

1      H.     For an order awarding Plaintiffs and the Class their reasonable attorneys'

2 fees and expenses and costs of suit.

3                              **JURY DEMAND**

4      Plaintiffs demand trial by jury on all issues herein stated.

5 Dated:    August 4, 2011

6                          **BURSOR & FISHER, P.A.**

7

8                            *[signature]*

9                    By:_____

                   Scott A. Bursor (State Bar No. 276006)

10                   L. Timothy Fisher (State Bar No. 191626)

                   Sarah N. Westcot (Sate Bar No. 264916)

11                   2121 North California Boulevard, Suite 1010

                   Walnut Creek, CA 94596

12                   Telephone: (925) 482-1515

                   Facsimile: (925) 407-2700

13                   E-Mail: scott@bursor.com

14                        ltfisher@bursor.com

                       swestcot@bursor.com

15                   **FARUQI & FARUQI, LLP**

                   Vahn Alexander (State Bar No. 167373)

16                   Christopher B. Hayes (State Bar No. 277000)

                   1901 Avenue of the Stars, 2nd Floor

17                   Los Angeles, CA 90067

                   Telephone: (310) 461-1426

18                   Facsimile: (310) 461-1427

                   E-Mail: valexander@faruqilaw.com

19                        chayes@faruqilaw.com

20                   *Attorneys for Plaintiffs*

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT                                            38

I, Richard N. James, declare as follows:

1.     I am a plaintiff in this action and a citizen of the State of California. I have personal knowledge of the facts herein and, if called as a witness, I could and would testify competently thereto.

2.     In or around November 2009, I purchased 5-hour ENERGY from a Chevron convenience store in Pasadena, California. The product label claims it provides five hours of energy, B-vitamins for energy and amino acids for focus. I was lead to believe that 5-hour ENERGY provided a feeling of increased energy from ingredients other than caffeine. After purchasing the product I discovered that the product did not provide five hours of energy, and any feeling of increased energy was due to the product containing a concentrated dosage of caffeine. The representations made on the product label and in product advertisements were substantial factors influencing my decision to purchase 5-hour ENERGY. If I had not seen those representations, I would not have purchased 5-hour ENERGY.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on August 2, 2011 at Sylmar, California.

Richard N. James

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Philip S. Gutierrez and the assigned discovery Magistrate Judge is Paul Abrams.

The case number on all documents filed with the Court should read as follows:

## CV11- 6408 PSG (PLAx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)    NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Vahn Alexander, Esq. (167373)
Faruqi & Faruqi, LLP
1901 Avenue of the Stars - 2nd Floor,
Los Angeles CA 90067
Tel: 310-461-1426

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILYA PODOBEDOV, JORDON MOUSSOUROS and RICHARD N. JAMES, On Behalf of Themselves and All Others Similarly Situated,<br><br>                                        PLAINTIFF(S)<br><br>                    v.<br><br>LIVING ESSENTIALS, LLC, INNOVATION VENTURES, LLC d/b/a LIVING ESSENTIALS, MANOJ BHARGAVA and BIOCLINICAL DEV.INC.<br><br>                                        DEFENDANT(S). | CASE NUMBER<br><br>**LACV11-6408**PSG(PLAx)<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): <u>LIVING ESSENTIALS, LLC, INNOVATION VENTURES, LLC d/b/a</u>
        <u>LIVING ESSENTIALS, MANOJ BHARGAVA and BIOCLINICAL DEVELOPMENT, INC.</u>

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, <u>Vahn Alexander, Faruqi & Faruqi, LLP</u>, whose address is <u>1901 Avenue of the Stars - 2nd Floor, Los Angeles CA  90067 Tel: 310-461-1426</u>.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____**AUG - 4 2011**_____

By: _____
        Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

Vahn Alexander, Esq. (167373)
Faruqi & Faruqi, LLP
1901 Avenue of the Stars - 2nd Floor,
Los Angeles CA 90067
Tel: 310-461-1426

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILYA PODOBEDOV, JORDON MOUSSOUROS and RICHARD N. JAMES, On Behalf of Themselves and All Others Similarly Situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>LIVING ESSENTIALS, LLC, INNOVATION VENTURES, LLC d/b/a LIVING ESSENTIALS, MANOJ BHARGAVA and BIOCLINICAL DEV.INC.<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**L A C V 1 1 - 6 4 0 8** PSG(PLA)<br><br><br>**SUMMONS** |

TO:    DEFENDANT(S): <u>LIVING ESSENTIALS, LLC, INNOVATION VENTURES, LLC d/b/a</u>
<u>LIVING ESSENTIALS, MANOJ BHARGAVA and BIOCLINICAL DEVELOPMENT, INC.</u>

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Vahn Alexander, Faruqi & Faruqi, LLP</u>, whose address is <u>1901 Avenue of the Stars - 2nd Floor, Los Angeles CA 90067 Tel: 310-461-1426</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____**AUG - 4 2011**_____

By: _____**SUSANA P. BUSTAMANTE**_____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| ILYA PADOBEDOV, JORDON MOUSSOUROS and RICHARD N. JAMES, On Behalf of Themselves and  All Others Similarly Situated. | LIVING ESSENTIALS, LLC, INNOVATION VENTURES, LLC d/b/a LIVING ESSENTIALS, MANOJ BHARGAVA and BIOCLINICAL DEVELOPMENT, INC. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Vahn Alexander, Esq. (167373) - Faruqi & Faruqi, LLP - 1901 Avenue of the Stars - 2nd Floor, Los Angeles CA  90067 - Tel: 310-461-1426 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

`BY FAX`

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No   ☑ **MONEY DEMANDED IN COMPLAINT:** $ Excess of $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)
Magnuson-Moss Act, 15 U.S.C. § 2301 – consumer fraud action which also alleges violations of state law consumer protection statutes, breach of warranty and contract.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

FOR OFFICE USE ONLY:   Case Number:   `ACV11-6408`

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No  ☑ Yes
If yes, list case number(s): Vi Nguyen v. Innovation Ventures, et al, Case No. 8:10-CV-01217-JST-MLG, Southern Division - Santa Ana

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☑ A. Arise from the same or closely related transactions, happenings, or events; or
       ☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
       ☑ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
       ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Plaintiff Richard N. James resides in Sylmar, CA - Los Angeles County | Plaintiff Ilya Padobedov resides in Brooklyn, NY - Kings County<br>Plaintiff Jordon Moussouros resides in Westchester, NY-Westchester Cty |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Defendant Innovation Ventures, Living Essentials, LLC, and Bioclinical<br>Development  - Farmington Hills, Michigan<br>Manoj Bhargava is a resident of Michigan |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date August 4, 2011

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |